# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAURA WATSON,                    :        No. 3:09cv294
         **Plaintiff**          :
                          :        **(Judge Munley)**
                          :
         **v.**               :
                          :
BOROUGH OF SUSQUEHANNA;           :
MIKE MATIS; and                   :
WILLIAM PERRY, JR.,               :
         **Defendants**        :

## MEMORANDUM

Before the court is defendants' motion for summary judgment.  (Doc. 19).

Having been fully briefed, the matter is ripe for disposition.

## Background

This case arises out of conflicts between Plaintiff Laura Watson and her

former employer, Defendant Borough of Susquehanna.[1]  The Borough hired plaintiff

as a part-time police officer in September 2006.  (Defendants' Concise Statement of

Material Facts (Doc. 28) (hereinafter "Defendants' Statement") at ¶ 5).[2]  Defendant

---

[1]The record contains conflicting references to this defendant; sometimes the parties refer to the defendant as Susquehanna Borough Depot and sometimes as Susquehanna Borough.  Since the case caption refers to Susquehanna Borough, the court will refer to the defendant that way.

[2]Plaintiff moves the court to strike defendants' motion for summary judgment because defendants failed to file their statement of material facts with the motion for summary judgment.  Plaintiff is correct that defendants did not file the statement of material facts at the same time they filed their motion for summary judgment.  Defendants did file, however, a motion for extension of time to file the brief in support of the motion for summary judgment, as well as the statement of material facts.  (See Doc. 20).  The court

promoted plaintiff to Sergeant in 2007.  (Id. at ¶ 6).

In May, 2008, plaintiff filed false report charges against William Perry, Sr.,

father of Defendant William Perry, Jr.  (Id. at ¶ 7).  She gave sworn testimony

against William Perry, Sr., in July 2008.  (Id. at ¶ 8).  Perry, Sr., pled no contest to

those charges on August 28, 2008.  (Id. at ¶ 9).  Perry, Jr. testified at the hearing

where plaintiff brought the charges against his father.  (See Perry, Jr. Deposition,

Exh. F to Defendants' Statement at 6-7).

On September 4, 2008, plaintiff signed a Request for Verification of

Employment form issued by Susquehanna County as part of a housing assistance

program.  (Id. at ¶ 10).  The defendants contend that this document represents a

"standard" form, though plaintiff insists that no evidence contained on the form itself

reveals how long the form has been in use, or how frequently the Borough uses it.

(Id. at ¶ 11; Plaintiff's Statement of Facts in Dispute (Doc. 38) (hereinafter "Plaintiff's

Statement") at ¶ 11).  The form, addressed to the Defendant Susquehanna Borough

and sent by the Susquehanna County Housing/Redevelopment Authority, states that

"[y]our employee has applied for rental assistance from the Susquehanna County

Housing Authority.  Your employee's signature at the bottom of this form authorizes

you to furnish the following information."  (See Exh. A to Defendants' Statement).

_____

granted this motion, despite plaintiff's objection.  (See Docs. 21, 22).  The statement of
material facts, therefore, was timely filed and there are no grounds to strike either the
motion or the statement of facts.  In any case, plaintiff points to no prejudice she suffered
from the defendants' allegedly late filing of their statement, and the court prefers to dispose
of cases on the merits.

The form asks the Borough to supply information on plaintiff's "length of employment," "position or job title," pay rate, and "probability of future employment." (Id.).  The form also states that "[t]he above information is to be held in strict confidence."  (Id.).  The form contains handwritten information in response to the above queries.  (Id.).  It also has plaintiff's name, address and social security number printed at the top of the form.  (Id.).  The form contains no other information about the plaintiff.  (Id.).  Plaintiff signed the form on September 4, 2008.  (Id.).

The Housing and Redevelopment Authority allegedly sent this information request to the Borough as a means of assisting plaintiff in obtaining rental assistance.  (Defendants' Statement at ¶ 16).  Plaintiff alleges that on September 4, 2008, defendant "obtained confidential information about Sergeant Watson's financial status as a single mother."  (Defendants' Statement at ¶ 15).  Defendant contends that, as an employee of the Borough, plaintiff's name, address and Social Security number would already have been in the Borough Depot's possession.  (Id. at ¶ 19).  Plaintiff insists that there is no evidence of record that Borough Council members would have been aware of this information.  (Plaintiff's Statement at ¶ 19).  Plaintiff contends that defendants "disclosed, copied and disseminated" information on plaintiff's financial status on September 8, 2008.  (Defendants' Statement at ¶ 20).  The parties disagree about whether the form here in question contains any such confidential information.  Defendants assert that the form does not contain such information; plaintiff disputes this, pointing to Housing and Urban Development

3

Department regulations that proscribe dissemination of confidential information printed and referenced on the form.  (Defendants' Statement at ¶ 21; Plaintiff's Statement at ¶ 21).

The parties also dispute whether defendants disclosed information contained on the form to anyone in the public or anyone not associated with plaintiff's employer, the Borough.  (Defendants' Statement at ¶ 22).  In responding to defendants' claim, plaintiff does not allege that defendants disseminated the information to the general public, but insists that the Borough Secretary improperly showed the form to Borough Council members.  (Plaintiff's Statement at ¶ 22). Moreover, she contends, this private information was discussed, copied and disseminated at a public Council Board meeting on September 8, 2008.  (Id. at ¶ 23). The parties disagree about whether this meeting was actually "public."  (Id. at ¶ 24; Plaintiff's Statement at ¶ 24).

On September 10, 2008, plaintiff allegedly complained to Borough Secretary Ann Stewart that confidential information concerning plaintiff in Stewart's possession had been illegally disclosed, copied and disseminated in violation of U.S. Department of Housing and Urban Development regulations.  (Defendants' Statement at ¶ 25).  Plaintiff asserts that she was speaking on a matter of public concern, serving as a whistleblower about violations of citizens' privacy rights by the Borough.  (Id. at ¶ 26).  The interaction between these two women became "heated," and they began shouting at each other.  (Id. at ¶¶ 43-44).  Plaintiff threatened to sue

4

the Borough and threatened to have Stewart fired.  (Id. at ¶ 45).  Plaintiff also

allegedly told Stewart that she would also have Stewart's husband arrested for a

parole violation.  (Id. at ¶ 46).  Stewart responded by yelling at plaintiff.  (Id. at ¶ 48).

She used a profanity in telling plaintiff to leave her office.  (Id.).  Stewart testified that

plaintiff's behavior frightened her.  (Id. at ¶ 47).  Stewart contacted Defendant Matis

about the situation, both texting and e-mailing him.  (Id. at ¶ 48).

The dispute between plaintiff and Stewart centered around Stewart's alleged

disclosure of plaintiff's private information.  The parties dispute whether Ann Stewart,

Secretary/Treasurer of the Borough disclosed any such information.  (Id. at ¶ 32;

Plaintiff's Statement at ¶ 32).  Plaintiff insists that Stewart provided the confidential

form, which contained plaintiff's social security number and request for financial

assistance, to Borough Council members Matis and Stewart, who distributed the

form to other council members, the mayor and Chief of Police.  (Plaintiff's Statement

at ¶ 32).  Stewart contends that she supplied this information to the council members

because she suspected that plaintiff had misused her paid time in obtaining the form

when she was supposed to be working.  (Defendants' Statement at ¶ 33).  Plaintiff

insists that this explanation masks the real reasons for her termination; she points to

deposition testimony from the Mayor and Police Chief that plaintiff's actions in

obtaining the form were not a violation of workplace rules.  (Plaintiff's Statement at ¶

33).

On September 10, 2008, Defendant Borough Council President Mike Matis

informed plaintiff that she could not appear at work for the next two days, and required her to report for a meeting on the following Saturday.  (Id. at ¶ 27).  The Susquehanna Borough Council terminated plaintiff's employment on September 17, 2008.  (Id. at ¶ 28).  Plaintiff contends that this termination was retaliation for her testimony against William Perry, Sr. and for her free speech in complaining about the Borough's supposed disclosure of confidential information.  (Id. at ¶¶ 29-30).  Defendants contend, by contrast, that plaintiff's termination resulted from her shouts and threats at Stewart on September 10, 2008.  (Id. at ¶¶ 55, 65).

Plaintiff filed her complaint on February 16, 2009. (See Doc. 1). The complaint contains two counts.  Court I alleges that defendants violated plaintiff's rights pursuant to the First Amendment of the United States Constitution by retaliating against her for speaking on a matter of public concern.  Count II raises a claim for violation of the Pennsylvania Whistleblower Act, alleging that the defendants retaliated against her after she reported wrong-doing to the Borough.

The parties then engaged in discovery.  At the close of discovery, defendants filed the instant motion.  The parties briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings her claims pursuant to 42 U.S.C. § 1983.  As such, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the

6

United States.").  The court has supplemental jurisdiction over plaintiff's state-law

claim pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts

have original jurisdiction, the district courts shall have supplemental jurisdiction over

all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article II of the

United States Constitution.").

### Legal Standard

Granting summary judgment is proper if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4

(3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere

existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

reasonable jury could not return a verdict for the non-moving party.  Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

Defendants contend that the court should grant summary judgment on each of

plaintiff's two claims.  The court will address each in turn.

**1.  First Amendment Retaliation**

Defendants argue that plaintiff's first amendment retaliation claim should be

dismissed.

In order to make out a First Amendment retaliation case, the court utilizes a

"three-step framework."  Reilly v. City of Atlantic City, 532 F.3d 216, 224 (3d Cir.

2008).  First, "the employee must demonstrate that his/her speech is protected, that

is, it addresses a matter of public concern and the 'employee's interest in the speech

outweighs' the employer's countervailing interest 'in promoting workplace efficiency

and avoiding workplace disruption.'"  Id. (quoting Reilly v. City of Atlantic City, 427

F.Supp. 2d 507, 514 (D. N.J. 2006).  Second, "the employee must prove that his/her speech was 'a substantial or motivating factor' in the retaliatory action against him/her."  Reilly, 532 F.3d at 225 (quoting Reilly, 427 F.Supp. 2d at 514-15).  If the plaintiff can establish these first two elements, she "shifts the burden to the employer to prove that the 'allegedly retaliatory action would have been taken absent the protected [speech].'"  Reilly, 532 F.3d at 225 (quoting Reilly, 427 F.Supp. 2d at 515).

Plaintiff contends that she engaged in protected speech in two different contexts.  The court will address each in turn, applying the legal standard stated above as appropriate.

### i. Speech in Bringing Charges Against William Perry, Sr.

Defendants argue that no evidence exists by which a jury could conclude that the William Perry, Jr. or Mike Matis took action to have plaintiff fired as a result of her testimony against William Perry, Sr.  Neither defendant knew that Perry, Sr. had pled guilty to the charges against him until after plaintiff filed her lawsuit.  None of the other members of the Borough Council who decided to fire plaintiff were even aware that charges had been filed against Perry, Sr.  No evidence of record indicates that any of the defendants considered plaintiff's testimony against Perry, Sr. in deciding to terminate plaintiff.  Instead, plaintiff's firing came because of her actions toward Ann Stewart on September 10, 2008.

Defendants do not appear to dispute that plaintiff's testimony in a court case against William Perry, Jr. qualifies as speech on a matter of public concern.  Nor

could they.  Courts have concluded that "courtroom testimony . . . raises the speech to a level of public concern regardless of its content, which in turn affords otherwise unprotected speech First Amendment protection."  Pro v. Donatucci, 81 F.3d 1283, 1291 n.4 (3d Cir. 1996).  The question here is whether evidence exists by which a jury could conclude that plaintiff's courtroom testimony was a "substantial motivating factor" in defendants' decision to end plaintiff's employment with the Borough.

Defendants insist that they should be granted summary judgment because no evidence establishes that they were aware of plaintiff's protected speech.  Courts have concluded that "for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct."  Ambrose v. Twp. of Robinson, 3030 F.3d 488, 493 (3d Cir. 2002).  The court rejects the defendants' argument on this point.  Taken in the light most favorable to the plaintiff, evidence indicates that defendants were aware that plaintiff had testified against Perry's father in a criminal case.  Perry, Jr. testified at the hearing where plaintiff brought charges against his father and a jury could thus conclude that he was aware of the charges plaintiff brought.  Plaintiff points to evidence in the form of deposition testimony from Stewart that Perry Sr.'s arrest was widely known in the small Borough.  She argues that jurors could reasonably infer that circumstantial evidence contradicts Matis's testimony about his knowledge of the arrest.  The court finds this evidence creates a question of fact about whether Matis knew of Perry, Sr.'s arrest.  Thus, defendants' argument, based on awareness of Perry Sr.'s arrest, fails.  While

a jury may in the end conclude that this knowledge of plaintiff's testimony did not

substantially motivate their actions in removing plaintiff from her police-officer

position, evidence exists by which a jury could find that defendants' knowledge of

plaintiff's testimony motivated their actions.  Defendants have met their burden to

show that the allegedly retaliatory action would have been taken absent the

protected speech, however; plaintiff's confrontation with Stewart could have led to

her termination.  The court will therefore deny summary judgment on these grounds.

### ii.  Speech in Complaining About Disclosure of Private Information

Defendants also seek summary judgment on plaintiff's first-amendment-

retaliation claim as it relates to plaintiff's complaints about the supposed disclosure

of her financial status to the public.   Defendants allegedly retaliated against the

plaintiff when she complained about disclosure of the form she filled out in search of

housing benefits by firing her.  Defendants argue that this "disclosure" was not to the

public at all, as the meeting where discussion of the form took place was a closed,

executive session that did not involve any members of the public.  Defendants also

assert that there is no evidence of retaliatory action in this case, as plaintiff lost her

job because of her conflict with Stewart, not because of her complaint about this

disclosure.

Defendant appears to misunderstand plaintiff's claim.  Plaintiff contends that

she spoke on a matter of public concern when she complained about disclosure of

supposedly confidential information.  Defendants do not dispute that plaintiff made

this complaint.  Instead, they argue that she was wrong to make the complaint, as the information was never disclosed to the public and did not amount to private information in any case.  Taking all evidence in the light most favorable to the non-moving party, the court concludes that the question in this case is not whether plaintiff was right to complain about the disclosure, but instead whether plaintiff engaged in protected speech.

To determine whether plaintiff has advanced a first-amendment-retaliation claim, "[t]he threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation."  Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).  If the plaintiff is a public employee bringing a complaint against his or her employer, the protected activity must address a "matter of public concern."  Id.  A public employee's speech addresses a matter of public concern when "it can 'be fairly considered as relating to any matter of political, social or other concern to the community.'"  Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (quoting Green v. Phila. Hous. Auth., 105 F.3d 882, 885-86 (3d Cir. 1997)).  A court is to "focus on the content, form, and context of the activity in question."  Id. Such speech qualifies for protection "if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'"  Id. (quoting Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993)).  If "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a

12

federal court is not the appropriate forum in which to review the wisdom of a

personnel decision taken by a public agency allegedly in reaction to the employee's

behavior."  <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983).

The court finds that plaintiff's speech addressed a matter of public concern.

Plaintiff complained that defendants released to the public private information

protected from disclosure by federal law.  Plaintiff may have been mistaken about to

whom, why and how the information was released, but her complaints to Stewart

and to other Borough officials, including the mayor, were clearly an attempt to bring

to light actual or potential wrongdoing by public officials.  Such speech did not have

to do with a personnel decision or workplace disagreement, but instead with what

plaintiff considered a violation of federal law.  As such, plaintiff's speech addressed a

matter of public concern.

Defendants contend that their action was not motivated by plaintiff's speech in

this instance, but instead related to her actions in confronting Stewart about her

supposed release of confidential information.  Plaintiff allegedly yelled at Stewart and

threatened to have her fired and have her husband arrested after she found out that

Stewart had provided her supposedly confidential information to Borough Council

members.   As explained above, there are questions of fact as to the dispute

between Stewart and the plaintiff.  Thus, the court finds that a jury should determine

whether defendants' actions were motivated by plaintiff's speech or by her conduct

in delivering that speech.  The court will deny the motion on these grounds.

## 2.  Pennsylvania Whistleblower Law

Defendants also argue that the court should grant them summary judgment on plaintiff's claims under the Pennsylvania Whistleblower Law.  The Pennsylvania Whistleblower Law provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . .  because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste."  43 P.S. § 1423(a).  Under the Act, a "good faith report" is "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."  43 P.S. § 1422.  "Wrongdoing" under the act is "[a] violation which not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or of a code of conduct or ethics designed to protect the interest of the public or the employer."  Id.  While the definition uses the phrase "'to protect the interest of the public,' and that could be interpreted to apply to any statute or ordinance as used in the context of retaliation taken by an employer because of an employee's work performance, that requirement means that a statute or regulation is of the type that an employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question."  Gray v. Hafer, 651 A.2d 221, 224 (Pa. Commw. Ct. 1994).  Still, "pursuant to the plain language of 42 P.S. §

1422, 'wrongdoing' includes not only violations of statutes or regulations that are 'of the type that the employer is charged to enforce,' but violations of any federal or state statute or regulation, other than violations that are 'of a merely technical or minimal nature.'" Golaschevsky v. Dept. of Envtl. Prot., 720 A.2d 757, 760 (Pa. 1998) (quoting 42 P.S. § 1422).

Defendants argue that plaintiff did not make a good-faith report of wrongdoing that would entitle her to whistleblower protection.  First, they insist that the report plaintiff made was not in good faith, since the report was not made without malice. Next, defendants argue that the supposed violation of federal law about which plaintiff complains was of a minimal or technical nature, and thus not covered by the law.  The Whistleblower Law provides that "[a]n employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority."  43 P.S. § 1424(b).  Thus, to make out a claim under the Whistleblower Law, a plaintiff must first "show, by a preponderence of the evidence, that, prior to the alleged acts of retaliation, he had made a good faith report of wrongdoing to appropriate authorities."  O'Rourke v. Dept. of Corrections, 778 A.2d 1194, 1201 (Pa. 2004).  Next, the "claimant must come forward with some evidence of a connection between the report of wrongdoing and the allegedly retaliatory acts."  Id.  If plaintiff meets this burden, defendant must

"rebut" this evidence by showing "by a preponderance of the evidence that action by the employer occurred for separate and legitimate reasons, which are not merely pretextual." Id.; 43 P.S. § 1424.

The court finds that evidence exists by which a jury could conclude that plaintiff made a good-faith report of a violation of a federal regulation or statute. Plaintiff accused Stewart and the other council members of violating the right of privacy provided by the Federal Housing Administration when she filled out an application for housing assistance. While defendants contend that plaintiff misunderstood the protections provided by the regulations and mistakenly accused Stewart of disseminating the information in a council meeting open to the public, plaintiff has presented evidence that indicates that she believed Stewart and the Council had purposefully released confidential information in a manner proscribed by the statute. Even if she was wrong, this evidence indicates plaintiff acted in good faith. Similarly, the alleged violation that plaintiff reported was not merely minimal or technical–some sort of innocent mistake–but instead amounted to the disclosure of private information that could cause plaintiff financial damage and humiliation. The court will deny the motion on those grounds.

In addition, "a Whistleblower claimant *must, as part of his case-in-chief*, prove a causal connection between the report of wrongdoing and the retaliatory act." Golaschevsky v. Department of Envtl. Resources, 683 A.2d 1300, 1304 (Pa. Commw. Ct. 1996) (emphasis in original). Defendants contend that plaintiff's

termination was a result of her behavior in confronting and allegedly threatening Stewart, not because of any report of wrongdoing she made to the Mayor, Stewart, or other township officials.  A jury may agree with the defendants on this point, but a question of fact exists as to the facts of plaintiff's disagreement with Stewart.  A reasonable jury could believe that plaintiff's termination was not a result of this confrontation, but because plaintiff has raised an issue of wrongdoing by the defendants, who she believed had improperly disseminated her private information in violation of federal law.  The court will therefore deny the motion on this point as well.

### 3.  Punitive Damages

Defendants also seek dismissal of plaintiff's claims for punitive damages under the Whistleblower Law.  They argue that such damages are unavailable under the statute.  Plaintiff agrees, and the court will grant the motion for summary judgment on this point.

### 4.  Jury Trial

Lastly, defendants argue that plaintiff is not entitled to a jury trial under the Whistleblower Law, and that the court should deny plaintiff's request for such. Plaintiff asserts that federal courts have found that a jury trial right exists in federal court under the statute.  "The right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law." Afr. v. City of Phila., 158 F.3d 723, 727 (3d Cir. 1998).  This policy applies "'even when a

17

state statute or state constitution would preclude a jury trial in state court.'" Marra v.

Phila. Hous. Auth., 497 F.3d 286, 313 (3d Cir. 2007) (quoting Gipson v. KAS

Snacktime Co., 83 F.3d 225, 230 (8th Cir. 1996)).  "The federal policy favoring jury

trials is of historic and continuing strength."  Simler v. Conner, 372 U.S. 221, 222

(1963).  The right is also "dictated by the clear command of the Seventh

Amendment" to the United States Constitution.  Marra, 83 F.3d at 230.

   The Supreme Court has "construed" the right to a jury trial provided by the

Seventh Amendment "to require a jury trial on the merits in those actions that are

analogous to 'Suits at common law.'"  Tull v. United States, 481 U.S. 412, 416

(1987).  To the Court, "[p]rior to the Amendment's adoption, a jury trial was

customary in suits brought in the English *law* courts.  In contrast, those actions that

are analogous to 18th-century cases tried in courts of equity or admiralty do not

require a jury trial."  Id. (emphasis in original).  In deciding "whether a statutory

action is more similar to cases that were tried in courts of law than to suits tried in

courts of equity or admiralty, the Court must examine both the nature of the action

and the remedy sought."  Id.  The court must "[f]irst . . . compare the statutory action

to 18th-century actions brought in the  courts of England prior to the merger of the

courts of law and equity."  Id.  Next, the court is to "examine the remedy sought and

determine whether it is legal or equitable in nature."  Id. at 418-19.

   In reference to the first of these inquiries, "the Supreme Court has noted that

'the Seventh Amendment applies not only to common-law causes of action, but also

to 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." Pichler v. Unite, 542 F.3d 380, 388 (3d Cir. 2007) (quoting Feltner v. Columbia Pictures Television, 523 U.S. 340, 348 (1998)).  This "right to a jury extends to statutory claims that did not exist at common law" when such claims "'can be said to 'soun[d] basically in tort,' and seek legal relief.'" Pichler, 542 F.3d at 388 (quoting Feltner, 523 U.S. at 348).

"Having established that 'the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791.'" Id. at 389 (quoting Markman v. Westview Instruments, Inc., 517 U.S. 370, 376 (1996)).  The court is to "'determine whether issues are proper for the jury' . . by using the historical method . . . look[ing] to history to determine whether the particular issues, or analogous ones, were decided by judge or jury in suits at common law at the time the Seventh Amendment was adopted.'" Id. (quoting City of Monterey v. Del Monte Dunes, 526 U.S. 718 (1999)).  If "history does not provide a definitive answer as to the particular or analogous issues, 'we look to precedent and functional considerations.'" Id. (quoting Del Monte Dues, 526 U.S. at 718).  Still, "characterizing the relief sought is 'more important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury

19

trial." <u>Tull</u>, 481 U.S. at 421 (quoting <u>Curtis v. Loether</u>, 415 U.S. at 196).

The court first finds that the type of claim brought by the plaintiff here sounds in tort. In <u>Pichler v. Unite</u>, 542 F.3d 380 (3d Cir. 2007), the Third Circuit Court of Appeals found that the Defendant Union would be entitled to a jury trial on claims that it had violated the federal Driver's Privacy Protection Act (DPPA) by recording license plate numbers of potential targets of a union recruitment drive and using commercial databases or vendors to locate the home of the vehicle's driver. <u>Id.</u> at 384. The court concluded that "like § 1983, the DPPA sounds in tort. Just as common-law tort actions provide redress for interference with protected personal or property interests, so too does the DPPA." <u>Id.</u> at 388. The court then examined the remedy sought and the means used by the plaintiff to prove that remedy and held that "where there is a genuine issue of material fact regarding the willfulness or recklessness of a defendant's conduct, . . . the Seventh Amendment requires a trial by jury on the issue of punitive damages under the DPPA." <u>Id.</u> at 390.

Like the DPPA, the Whistleblower Act sounds in tort. Like the DPPA, the Whilstleblower Act provides redress for interference with protected personal interests. The Whistleblower Act protects a plaintiff's right to speak freely without interference from self-interested government officials, and thus protects against actions that harm a private interest. The Whistleblower Act also requires the decision of a jury to preserve the right as it would have existed in 1791. The statute in this case provides that "a person who alleges a violation of this act may bring a

civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both."  43 P.S. § 1424(a).  Historically, "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo, were issued by courts of law, not courts of equity."  Tull, 481 U.S. at 422.  The remedy here is designed to punish the culpable individual–the person who retaliated against the plaintiff–for the damage that individual caused, not to restore the status quo.  As such, that remedy is one that would traditionally have been the province of a court of law, and thus one that requires a jury trial.  This claim will be tried by a jury.

**Conclusion**

For the reasons stated above, the defendants' motion will be granted in part and denied in part.  The motion will granted with respect to plaintiff's claims for punitive damages under the Whistleblower Law and denied in all other respects.  An appropriate order follows.

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAURA WATSON,** | : | **No. 3:09cv294** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BOROUGH OF SUSQUEHANNA;** | : | |
| **MIKE MATIS; and** | : | |
| **WILLIAM PERRY, JR.,** | : | |
| **Defendants** | : | |

**ORDER**

**AND NOW**, to wit, this 30th day of March 2011, the defendants' motion for summary judgment (Doc. 19)  is hereby **GRANTED** in part and **DENIED** in part, as follows:

1.  The motion is **GRANTED** with respect to plaintiff's claims for punitive damages under the Pennsylvania Whistleblower Act; and

2.  The motion is **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**