# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| LAURA WATSON | : | |
| --- | --- | --- |
| Plaintiff | : | |
| v. | : | 3:09-CV-294 |
| | : | (JUDGE MARIANI) |
| BOROUGH OF SUSQUEHANNA, et al., | : | |
| Defendants | : | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' renewed Motion for Judgment as a Matter of Law (Doc. 134) and all accompanying briefs. For the reasons set forth below, the Court will grant Defendants' Motion.

### II. Procedural History

Trial commenced in this case on April 30, 2012. At the close of Plaintiff's case-in-chief, Defendants' attorney, Mr. Murphy, moved for judgment as a matter of law ("JMOL"), but the Court deferred ruling on the motion. At the close of the Defendants' case-in-chief and at the close of all the evidence, Attorney Murphy renewed the motion, and again, the Court deferred ruling on it. Following the jury's return of a verdict, Defendants' attorney once more renewed the motion and alternatively requested a new trial pursuant to Federal Rule of Civil Procedure 59. (Doc. 134).

On May 7, 2012, a jury rendered a verdict in favor of Defendant Matis and Defendant Borough of Susquehanna, but rendered a partial verdict against Defendant Perry, Jr. on Plaintiff's claim of First Amendment retaliation with respect to her testimony against Defendant Perry, Jr.'s father at an unrelated criminal hearing. The jury awarded Plaintiff $5,000 in compensatory damages and $10,000 in punitive damages with respect to this constitutional violation.

### III. Statement of Facts[1]

Until her termination in September 2008, Plaintiff Laura Watson had been a police officer with the Borough of Susquehanna since September 2006. (Watson testimony, Tr. Trans., Doc. 145, 114:14-115:5). On July 14, 2008, as part of her duties, she testified against Defendant Perry, Jr.'s father at a preliminary hearing in a criminal case. (*Id.* at 139:3-16). Defendant Perry, Jr. was present for at least a portion of the preliminary hearing. (*Id.* at 139:12-16). Following the charges being bound over for trial (*id.* at 139:18-19), Perry, Sr. pled guilty to the charge of false reports on August 28, 2008. (Watson testimony, Tr. Trans., Doc. 146, 8:9-11).

Shortly afterwards, on September 9, 2008, Plaintiff learned that her Section 8 housing assistance form had been "passed . . . around" at a "special" Council meeting. (*Id.* at 12:6-9). The next day, she found that same form "right on the phone [at the station], open to any police officer to view." (*Id.* at 12:18-19). She confronted the Borough

---

[1] The following is a truncated statement of facts. Because the Court is granting Defendants' Motion for JMOL, a full recitation of the facts is unnecessary.

2

Secretary-Treasurer, Ann Stewart, about the disclosure of this "private" information. (*Id.* at 13:11-14:13). Stewart testified that the reason for this "disclosure" was that Plaintiff's time card indicated she was on duty when she was at the Housing Authority office attending to personal business, and because part of Stewart's duties as Secretary-Treasurer involved payroll, she brought the matter to Defendant Matis's attention. (Stewart testimony, Tr. Trans., Doc. 147, 15:16-20; 16:23-17:13; 18:11-24:24). Multiple witnesses testified that this confrontation grew heated and angry, including threats by Plaintiff against Stewart and Stewart's husband. (*Id.* at 27:7-28:22; *see also* Collier testimony, Tr. Trans., Doc. 146, 111:25-113:18; Def. Ex. 23). At another special meeting of the Council on September 17th, Plaintiff again protested the distribution of her form to Borough Council members. (Watson testimony, Tr. Trans., Doc. 146, 15:3-5; 54:1-55:10). Again, multiple witnesses testified that Plaintiff was extremely angry and threatened Council members. (*See, e.g.,* Scales testimony, Tr. Trans., Doc. 147, 87:1-88:7; Dewitt testimony, 115:21-116:11; Iveson, Jr. testimony, 225:23-226:14). She was terminated by letter later that month. (Watson testimony, Tr. Trans., Doc. 146, at 56:10-15).

Plaintiff argued that because of these two instances of protected free speech,[2] the Borough Council, acting on behalf of Defendant Borough of Susquehanna, Defendant Michael Matis (President), and Defendant William Perry, Jr. (Vice-President) retaliated against her by terminating her employment in violation of her First Amendment rights. She

---

[2] That is, her testimony against Perry, Sr. and her report of misconduct in the form of disclosure of her private and confidential information.

3

also alleged that she was terminated in violation of the Pennsylvania Whistleblower Law. 43 P.S. §§ 1421-1428.

After hearing all the evidence, the jury found that Defendant Matis had been aware of Plaintiff's testimony against William Perry, Sr. and had been influenced by that knowledge when he voted to terminate Plaintiff's employment with the Borough. (Sp. Verd. Form, Doc. 122, ¶¶ 1-2). However, the jury further found that he would have made the same decision regardless of whether Plaintiff had testified against William Perry, Sr. (*Id.* at ¶ 3). The jury also found that none of the other four Borough Council members who had voted to terminate Plaintiff's employment had been aware of Plaintiff's testimony against Perry, Sr. (*Id.* at ¶ 21). Thus, the jury found that of all the Council members who had voted to terminate Plaintiff's employment, only Defendant Perry, Jr. had been motivated by retaliatory reasons (for Plaintiff's testimony against his father), and that he would not have made the same decision to vote to terminate her in the absence of such protected speech. (*Id.* at ¶¶ 11-13). The jury found in favor of all Defendants on Plaintiff's First Amendment retaliation claim with respect to her report of the disclosure of her private financial information, as well as Plaintiff's state law whistleblower claim. (*See id.*).

## IV. Analysis

### Standard of Review

Under Fed. R. Civ. P. 50(a)(1):

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary

4

basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

If a court declines to grant a motion for judgment as a matter of law under Rule 50(a), a party may renew its motion after trial under Rule 50(b), wherein "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." A motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (internal citations and quotation marks omitted). Although judgment as a matter of law should be granted sparingly, it is appropriately granted when "the record is critically deficient of the minimum quantum of evidence in support of the verdict. The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009) (internal citations and quotation marks omitted). In conducting its inquiry, the court "must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." *Id.*

### First Amendment Retaliation Claim

To establish a First Amendment retaliation claim, a plaintiff must prove three elements: (1) that she engaged in constitutionally protected activity; (2) that the government

5

responded with retaliation; and (3) that the protected activity caused the retaliation. *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). "It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

Previously, Judge Munley held that Plaintiff's testimony at Defendant Perry, Sr.'s preliminary hearing constituted protected activity. (Doc. 47, at 10) (citing *Pro v. Donatucci*, 81 F.3d 1283, 1291 n.4 (3d Cir. 1996) ("courtroom testimony . . . raises the speech to a level of public concern regardless of its content, which in turn affords otherwise unprotected speech First Amendment protection.").[3] Furthermore, it is undisputed that Plaintiff suffered an adverse action in the form of termination from her employment. However, the jury expressly found that of the six Borough Council members who voted to terminate Plaintiff's employment, four members[4] were unaware that she had testified against Perry, Sr. (Sp. Verd. Form, ¶ 21). That is, only Defendants Matis and Perry, Jr. were found to have been aware of Plaintiff's protected speech. Furthermore, though the jury found that Defendant Matis was aware of Plaintiff's protected speech and was substantially motivated by it when voting to terminate Plaintiff's employment, he would have made the same decision even if the protected speech had never occurred. (*Id.* at ¶¶ 1-3). Therefore, the jury determined that *only* Defendant Perry, Jr. was aware of Plaintiff's protected speech, was substantially

---

[3] Because the motion for JMOL pertains to only the speech connected with Plaintiff's testimony against Perry, Sr., there is no need to discuss the speech associated with Plaintiff's protests against the disclosure of her housing assistance form.

[4] Those members were William Iveson, Jr., David Scales, Alan Wolff, and Roy Williams.

motivated by it, and would not have made the same decision to vote to terminate her in the absence of such protected speech. (*Id.* at ¶¶ 11-13).

Therefore, the critical question becomes whether Plaintiff established a causal link between her protected speech and subsequent termination through Defendant Perry, Jr.'s vote to terminate her employment. Though there does not appear to be controlling Third Circuit precedent,[5] the Second Circuit has provided valuable guidance on this precise issue. "[I]f a majority of defendants prove that their individual votes against the plaintiff would have been the same" regardless "of the plaintiff's protected conduct, then the defendants as a group cannot be held liable, *and no individual defendant, even one whose proof falls short, can be so held because causation is absent.*" *Coogan v. Smyers*, 134 F.3d 479, 485 (2d Cir. 1998) (remanding to the district court to determine which of the five votes against the plaintiff's reappointment, which included one vote in abstention, were for unlawful political reasons)[6] (internal citations and quotation marks omitted) (emphasis added). Furthermore, "even if some defendants based their decision solely on impermissible grounds, a finding that a majority of defendants acted adversely to the plaintiff on legitimate grounds is *sufficient for all to escape liability.*" *Id.* (citing *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir.1995)) (emphasis added). Of particular relevance to this case, the *Coogan* court illustrated when individual voting members could be held liable:

---

[5] However, *see infra* for a discussion of a relevant and helpful Third Circuit case, *LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123 (3d Cir. 2003).

[6] Two members of the seven-member council had voted to reappoint the plaintiff to his position as city clerk. The district court had addressed the motives of only three of the five council members who had voted not to reappoint. Consistent with its own precedent, the Second Circuit remanded for determinations of the motivations of the two remaining council members who did not vote for the plaintiff's reappointment.

7

In *Jeffries*, fifteen defendants acted to limit a City College professor's term as chairman of the Black Studies department because of an inflammatory speech he had given. We held that under "elementary principles of causation," Jeffries had suffered no cognizable injury because even though the jury had found that six defendants acted for impermissible retaliatory motives, the fact that nine defendants, a clear majority, had voted against Jeffries for constitutionally permissible reasons constituted "a superseding cause breaking the causal chain between the tainted motives . . . and the decision to limit Jeffries' term." In the instant case, therefore, if four of the defendants who voted against Coogan's reappointment proved that, in addition to impermissible political motives, they had legitimate motives for their vote, then neither the Council as a whole nor any of its members could be held liable, even if one or more defendants fail to prove a legitimate motive.

134 F.3d at 485-86 (internal citations omitted); *cf. LaVerdure v. Cnty. of Montgomery*, 324 F.3d 123, 125-26 (3d Cir. 2003); *Scully v. Borough of Hawthorne*, 58 F. Supp. 2d 435, 455 (D.N.J. 1999) ("because a municipal ordinance can become law only by a majority vote of the city council, there is a certain incongruity in allowing fewer than a majority of the council members to subject the city to liability under section 1983.").

The Third Circuit stated in *LaVerdure v. Cnty. of Montgomery*,

It is undisputed that only a majority of the three-member Board is authorized to establish policy on behalf of the County. Therefore, whatever the contents of Marino's statements, because he was only one member of the Board, those comments do not constitute County policy. . . . Even though Marino himself lacked final policymaking authority that could bind the County, [the plaintiff] could have demonstrated that the Board delegated [Marino] the authority to speak for the Board or acquiesced in his statements. [The plaintiff] failed to meet her burden to prove delegation or acquiescence, however. She failed even to depose the other two Board members or call them to testify at trial—methods by which she might have proved delegation or acquiescence. Thus, the District Court was correct in holding that Marino's comments could not subject the County to § 1983 liability. Proving that a

> municipal official is a final policymaking authority is a fundamental element of
> a § 1983 cause of action against a municipality.

324 F.3d 123, 125-26 (3d Cir. 2003) (internal citations omitted). *LaVerdure* stands for the proposition, among others, that one member of a decision-making body cannot, by himself, subject that body to liability. A logical extension of this principle is that if a Borough cannot be liable based on the improper actions of one of its members, neither can that member be liable because his actions alone could not have formed and do not constitute a controlling majority that could take any action, constitutional or otherwise.

Plaintiff correctly argues that *Scully* is more applicable to an analysis of a Borough's liability, rather than an individual council member's liability. Indeed, the Court relied on *Scully's* reasoning when creating the special verdict questions with respect to the Borough of Susquehanna's potential liability. (*See* Doc. 122, ¶¶ 23. 27). Nevertheless, the same corollary at work in *LaVerdure* holds true both here and in *Scully*: if a Borough cannot be liable based on the improper actions of one of its members, neither can that individual be liable because his actions alone could not have effected any action against Plaintiff.

Applying the above reasoning to the facts of this case, the jury determined that the causal link was missing between Plaintiff's protected activity and subsequent termination when assessing the *Borough's* potential liability because four of the six voting members were not aware of Plaintiff's testimony against William Perry, Sr. Defendant Perry, Jr. argues in his motion that he, too, should not be held liable because he was merely one vote out of six on the Council. Furthermore, by the jury's finding that the other Council members

9

(excluding Defendant Matis) were unaware of the speech, Defendant Perry, Jr. could not have influenced the other Council members' votes. The Court agrees that, as a matter of law, Defendant Perry, Jr. lacked the authority to terminate anyone's employment. Though the jury found he acted out of retaliation, Defendant Perry, Jr.'s actions did not affect the outcome of the Council's vote because the jury also found that four of the Council members were unaware of Plaintiff's testimony against his father. As such, the impartiality of the other Council members' votes nullified Defendant Perry, Jr.'s unlawfully-motivated vote. Acting alone, he could not have violated Plaintiff's First Amendment rights. Thus, the Court will vacate the jury's award of $5,000 in compensatory damages in favor of Plaintiff and against Defendant Perry, Jr.

*Plaintiff's Arguments*

Plaintiff's primary argument against Defendant Perry, Jr.'s motion is that he failed to object to "inconsistent jury instructions" at the time they were given, and so, he waived his right to raise in his renewed motion the argument that Defendant Perry, Jr. could not have caused Plaintiff's termination. (Doc. 165 at 2-5).

First, Plaintiff does not indicate how the jury instructions were inconsistent. The jury found that Defendant Perry, Jr. was aware of Plaintiff's protected speech against his father and that this knowledge substantially motivated his vote to terminate her employment. The special verdict questions ask nothing about his ability or authority to take any adverse action against Plaintiff on his own. The Court decides, as a matter of law, that absent a majority

10

vote to do so, Plaintiff's employment could not have been terminated, notwithstanding the tainted vote of Defendant Perry, Jr. in favor of termination.

The questions were submitted to the jury because it was necessary to ask not only about Defendant Perry, Jr.'s motivations for his vote but also whether a majority of voting members had been aware of Plaintiff's testimony against Perry, Sr.[7] If the jury had found that a majority of voting members had been aware of the protected speech *and* been substantially motivated by that speech without an otherwise legitimate reason to take the same action, then the Borough would have been liable for First Amendment retaliation. Then, and only then, would Defendant Perry, Jr. have been liable on that claim. Because the Court first needed to know whether a majority of voting members had harbored improper motives for terminating Plaintiff, it could not have granted judgment as a matter of law in favor of the two individual defendants before submitting the case to the jury.

Second, if there is an inconsistency in the special verdict questions, Defendant Perry, Jr. did not waive them. When Defense counsel first made his motion for judgment as a matter of law at the close of Plaintiff's case-in-chief, he stated: "the Defendants move to dismiss the individual Defendants in this case. This is clearly a decision that was made by

---

[7] The special verdict questions sought jury responses as to whether a majority of Borough Council was aware of Plaintiff's testimony against Perry, Sr. and motivated by that speech. The questions also sought a response as to whether a "substantial bloc of Borough Council members voted to terminate Laura Watson" and whether the jury further found "that there is evidence of probable complicity among the other Council members to terminate [Plaintiff] in violation of her free speech rights because she testified against William Perry, Sr. at a preliminary hearing[.]" (Sp. Verd. Form ¶¶ 22, 23). Because the jury found that four of the six voting members of the Borough Council were unaware of Plaintiff's testimony against Perry, Sr. (*id.* at ¶ 21), it properly followed instructions which directed that it not answer the questions as to the Borough Council's motivations for terminating Plaintiff's employment. Absent knowledge of Plaintiff's testimony against Perry, Sr., these council members could not have had an unlawful retaliatory motive based on Watson's testimony against Perry, Sr. Thus, what is at issue here is a jury verdict which shows that Plaintiff failed to prove that a majority voted to terminate her for unlawful and retaliatory reasons.

11

seven people comprised of Borough council. Borough council was the decision maker in this case to terminate the Plaintiff, not Mr. Matis individually, not Mr. Perry individually."[8] (Tr. Trans., Doc. 146, 152:20-25). Later, in response to Plaintiff's counsel, Attorney Murphy stated, "Let's assume Councilman Perry, Jr. was aware of the speech, let's assume it. Where is the connection shown by Plaintiff in this case so far to show that the other six council people were aware of it, considered it, in their decision to terminate the Plaintiff in this case?" (*Id.* at 156:10-15). He elaborated on this point by saying:

> Assuming [Perry, Jr.] was even aware of [the speech], where is the connection to that and the six other council members knowing that? There's no evidence of that, there's no evidence of the other six people. So if one person has it in his mind, and assuming he has it in his mind that he's upset about the courtroom testimony, where is the evidence that played into the decision to terminate for the other six people?

(*Id.* at 161:8-17). At the conclusion of arguments by counsel, the undersigned and Attorney Murphy had the following exchange:

> MR. MURPHY: Because the decision makers, again, are council, they are not Mr. Matis and Mr. Perry, the decision makers in this case are Borough council, the seven people who raised their hand and voted in favor of termination.
>
> THE COURT: So in your mind, there could not be individual liability for Mssrs. Perry, Jr. and Matis, in the absence of liability on the part of the Borough?
>
> MR. MURPHY: Yes, I don't see where that was established in this case by the evidence, Your Honor.

(*Id.* at 162:7-16).

---

[8] Though Attorney Murphy spoke of a seven-member council, only six of the council members voted on the issue of Plaintiff's employment termination.

At the close of Defendants' case-in-chief, and at the close of the evidence, Attorney Murphy renewed Defendants' motion for judgment as a matter of law. (Tr. Trans., Doc. 148, 108:6-11; Tr. Trans., Doc. 149, 12:13-20). Following the jury's verdict, Attorney Murphy filed his post-trial motion for judgment as a matter of law. (Doc. 134).

As illustrated above, Attorney Murphy clearly set forth his reasons in support of his oral motions for judgment as a matter of law. It matters not that he "failed" to object to any perceived inconsistencies in the special verdict slip or jury instructions. *See Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1252 (Fed. Cir. 2005). "JMOL can be granted either before or after the jury has rendered a verdict, *and it does not depend on how the jury was instructed*. The test is whether there is a legally sufficient basis for a reasonable jury to find for the nonmoving party under the controlling law." *Id.* (citing FED. R. CIV. P. 50(a)(1)) (internal quotation marks omitted). The *Harris* court went on to say that "irrespective of any jury instructions," the "controlling law is the legal interpretation of the asserted claims." *Id.*

The same is true here. "Irrespective of any jury instructions," the underlying basis for Attorney Murphy's motion for JMOL was that, as a matter of law, the two individual defendants acting alone could not have terminated Plaintiff's employment with the Borough of Susquehanna. Attorney Murphy was diligent in preserving his arguments; he moved for JMOL at the close of: Plaintiff's case-in-chief, Defendants' case-in-chief, all the evidence,

and after the jury returned its verdict. The Court finds that Defendants in no way waived any rights to raise this argument and will grant JMOL on that basis.[9]

## Punitive Damages

Because the Court concludes that, as a matter of law, Defendant Perry, Jr. could not have violated Plaintiff's First Amendment rights, it also must vacate the jury's award of $10,000 in punitive damages. "[P]unitive damages may be awarded to *punish violations of constitutional rights.*" *Rivera-Oquendo v. Soto-Santiago*, 552 F. Supp. 2d 229, 232 (D.P.R. 2008) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) (emphasis added)). "In sum, in a section 1983 action, a jury may properly award punitive damages . . . only where the jury first finds that a constitutional violation was committed by the party against whom the punitives are imposed". *Id.* at 233 (vacating award of punitive damages because jury expressly had found that no constitutional violation had occurred).

## Defendant's Motion for a New Trial or Remittitur

Because the Court decides that Defendant Perry, Jr. is entitled to judgment as a matter of law, these portions of the motion are now moot.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Judgment as a Matter of Law and vacate the judgment against Defendant Perry, Jr. on Plaintiff's First

---

[9] As such, the Court will not address Defendants' argument that the weight of the evidence was insufficient to find that Defendant Perry, Jr. was unaware of Plaintiff's testimony against his father.

14

Amendment retaliation claim with respect to her courtroom testimony against William Perry, Sr. It will also vacate the award of $5,000 in compensatory damages and $10,000 in punitive damages. As such, Plaintiff's Motion for Reinstatement (Doc. 128), Motion for Attorney's Fees (Doc. 130), and Motion for Consideration of Defense Counsel Attorney Rates and Attorney Invoices and Statements (Doc. 143) are denied as moot.

Robert D. Mariani
United States District Judge